**STARK COUNTY LOCAL EMERGENCY PLANNING COMMITTEE et al.**

v.

**KULKA STEEL AND EQUIPMENT COMPANY.**

Court of Common Pleas of Ohio,
Stark County.

No. 1995CV01081–OC.

Decided April 15, 1996.

*Robert D. Horowitz,* Stark County Prosecuting Attorney, and *Kristen L. Bates,* Assistant Prosecuting Attorney, for plaintiffs.

*John Gruttadaurio,* for defendant.

JOHN G. HAAS, Judge.

This matter came on for trial, and the court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The defendant has stipulated to two violations of R.C. 3750.06. The first violation was a failure of the defendant, pursuant to R.C. 3750.06(C), to immediately notify the plaintiff verbally, by telephone, radio, or in person, within thirty minutes after a person at the facility had knowledge of the release. The second violation, under R.C. 3750.06(D), was a failure of the defendant to provide written notification to the Stark County Emergency Planning Commission within thirty days after the release, as required by that section.

2. The defendant company submitted the written notification required by R.C. 3750.06(D) on the morning of the date of trial, April 9, 1996.

3. The oil spill in question occurred in late July 1994, at a point in time prior to 4:30 p.m. on July 29. At approximately that time and date, the Ohio Environmental Protection Agency received a call from a citizen concerning a possible environmental problem on the Mahoning River at a location in Alliance, Ohio, in Stark County. Pursuant to the procedures of the Ohio EPA, the on-call person contacted Bruce Miller, an environmentalist specialist III employed by the EPA, to report to the site.

4. Upon reporting to the site, Miller observed a rainbow sheen on the surface of the river and attempted to trace the source of what appeared to be an oil slick. Due to darkness, Miller had to report back the following morning, at which time he was able to trace the oil slick to the location of the defendant's plant in

Alliance, Ohio. Upon entering the site of the defendant, Miller observed a large puddle of oil on the ground, approximately thirty feet by thirty-five feet. He further observed transformer casings at the edge of the puddle of oil. Miller was unable to locate persons in authority at Kulka Steel to authorize cleanup efforts, and, therefore, pursuant to law, authorized ChemTron Corp. to take action to abate the hazard. On July 31, 1994, Bruce Green, who is the president and part-owner of the defendant, signed an acceptance of financial liability form on behalf of the company, and eventually a cleanup operation was undertaken, which was completed on or about the 8th day of August, 1994, at a cost of $19,500.75, which was paid by the defendant.

5. The plaintiff, Stark County Emergency Planning Commission, was informed about the incident by reading about the same in the Canton Repository.

6. On August 3, 1994, Lance Wilcox, the coordinator of the Stark County Emergency Planning Commission, contacted Bruce Green concerning the incident and the need for notification pursuant to statute.

7. On August 5, 1994, a followup letter was sent to Green by Wilcox, in which letter a booklet was enclosed setting forth the responsibilities of the company and the reporting requirements, including the initial verbal report and the followup thirty-day written report.

8. On September 12, 1994, a followup letter was sent to Green when plaintiff had not received the written notification as required by the statute. Subsequently, the matter was turned over to the Stark County Prosecutor's Office, legal counsel for the plaintiff, and a letter was sent by that office to Green dated February 2, 1995. Thereafter, not having received the notifications as required by statute, plaintiff filed the action *sub judice* on June 23, 1995.

9. The oil located in the river was tested and matched with the oil found on defendant's site.

10. While there was some minimal destruction of vegetation as a result of the spillage and drainage into the river, there was no evidence of fish kill or other damage to the environment as a result of the spill.

11. Approximately two hundred gallons of oil were collected from the river and approximately seven hundred sixty-three gallons of oil were contained in the transformers which had been delivered to the site of the defendant.

12. While the actual damage to the environment was minimal, the potential harm to the environment was substantial due to the potential for fish kill, destruction of vegetation, and other related environmental hazards created by oil being spilled into a waterway.

13. While the state of Ohio alleged that the spill was a result of dumping and was deliberate in nature, the evidence before the court is not sufficient to find that the acts of the employees of the defendant were more than negligence in the handling of containers that contained the oil which resulted in an accidental spill.

14. The court further finds that defendant company authorized the employees to be at the site at the time in question and was responsible for the actions of the employees and their failure to immediately notify appropriate agencies of the spillage, which delay could have resulted in much greater harm to the environment had not a concerned citizen sighted the sheen on the river and reported the same to the Ohio EPA.

15. No justifiable excuse was given by the company for its failure to appropriately respond pursuant to the statute, the evidence being that defendant company was in possession prior to the incident of the appropriate regulations and notification requirements.

16. No further justifiable excuse was given by the defendant company for its failure to provide the written notification to the plaintiff after numerous efforts were made by the plaintiff to secure compliance with the statute prior to filing this litigation, and indeed even after the litigation was filed.

17. There is no evidence that the defendant has experienced other compliance problems.

18. There is no evidence of any economic benefit experienced by the defendant as a result of the violations.

## CONCLUSIONS OF LAW

1. Based on the stipulation of the defendant to two violations, the court finds as a matter of law that the defendant company violated R.C. 3750.06(C) and 3750.06(D).

2. The court holds as a matter of law that the language of the penalty provision of R.C. 3750.20 provides for a civil penalty of not more than $25,000 for each day of violation. The court finds that the maximum penalty allowed by law, giving the plain meaning to the language of R.C. 3750.20, is for a penalty of not more than $25,000 to be paid for each day that a violation continues. It is obvious to this court that the legislature deemed it very important that immediate notification be given concerning a spill, and that the potential for harm to the environment each day that the notification is delayed is the basis for the penalty increasing each day the notification is not given.

3. Notwithstanding the maximum penalties that may be imposed for the two violations, which violations continued to the date of trial, the court, as a

matter of law, is also required to consider factors such as the seriousness of the offense, the good faith effort or lack of good faith effort on the part of the defendant to comply, the economic benefit to the defendant company as a result of its failure to comply, compliance history of the defendant company, the degree of willfulness and/or negligence on the part of the defendant company, the probability of harm to the environment, and the extent of the potential harm.

4. In the present case, the defendant company did not act deliberately in creating the spill, but certainly was negligent and gave no basis or reasonable justification for its failure to comply with the statutory requirements. Fortunately, the spill did not result in substantial harm to the environment, although the potential harm was substantial. The defendant company was benefitted by the actions of a concerned citizen and the prompt action by the Ohio EPA in taking action to abate the spillage.

5. In the present case, the evidence before this court showed a disdain on the part of the defendant company for the statutory requirements as they related to the plaintiff. This disdain was illustrated by its failure to promptly act after numerous attempts were made by the commission, and thereafter by the prosecutor's office, to secure compliance. While the defendant company has argued that the penalty should be minimal, in that it paid for the cleanup and there was minimal harm to the environment, such argument misses the point as to the reason for the statutory notifications or the fact that but for the actions of others, cleanup costs could have been substantially higher and harm to the environment substantial.

For the foregoing reasons, the court imposes a civil penalty of $10,000 for defendant's violation of R.C. 3750.06(C) and a penalty of $25,000 for defendant's failure to comply with R.C. 3750.06(D), for a total penalty of $35,000.

This is a final appealable order and there is no just cause for delay.

*Judgment accordingly.*